**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 8 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JILL M. CRUMPACKER,

       Plaintiff-Appellee,

v.

STATE OF KANSAS, DEPARTMENT
OF HUMAN RESOURCES,

       Defendant-Appellant.

No. 02-3197

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 00-CV-4044-RDR)

---

Deborah J. Blakely, White, Allinder, Graham & Buckley, L.L.C., Independence, Missouri (Gene P. Graham, Jr., Mary Beth Compton, White, Allinder, Graham & Buckley, L.L.C., Independence, Missouri; Timothy W. Monsees, Monsees, Miller, Mayer, Presley & Amick, Kansas City, Missouri, on the brief), for Plaintiff-Appellee.

Deanne Watts Hay (Stanley R. Parker, with her on the briefs), Parker & Hay, L.L.P., Topeka, Kansas, for Defendant-Appellant.

---

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff, Jill Crumpacker, filed this suit against her former employer, the State of Kansas (the "State"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, alleging gender discrimination and retaliation. The State moved for summary judgment, arguing, in part, that it was immune from suit under the Eleventh Amendment. The district court granted the State's motion as to one of Crumpacker's retaliation claims and denied the State's motion as to the remaining claims. The State filed an interlocutory appeal of the Eleventh Amendment immunity issue and other issues raised in its motion for summary judgment.

This court has jurisdiction over the Eleventh Amendment immunity issue and exercises pendent jurisdiction over the issue of whether a retaliation claim can be maintained when the plaintiff has only a subjective good-faith belief that the underlying conduct violated Title VII. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200 (10th Cir. 2002). This court **affirms** the district court's denial of the State's motion for summary judgment, concluding that Congress properly abrogated the states' Eleventh Amendment immunity from Title VII retaliation claims predicated on a reasonable good-faith belief that the complained of activity violated Title VII.

## II. BACKGROUND

From August 1996 through September 1998, Crumpacker was employed as the Director of Employment and Training of the Kansas Department of Human Resources. On August 21, 1998, Crumpacker wrote a thirteen-page letter to the Kansas Secretary of Human Resources, Wayne Franklin, (the "Franklin letter") in response to two meetings she had with Franklin regarding her job performance. In this letter, Crumpacker complained of the way she was being treated at work and made reference to her gender twice. She stated, "As your only female division director, I have worked exceedingly hard during the past two years to 'fit in with the guys.'" Crumpacker further stated:

> With respect to the meetings of July 20 and 22, 1998, and your letter of July 22, 1998, the statements that I am or have ever acted to undermine either Roger Aeschliman or A.J. Kotich are untrue. What is true is that both Roger and A.J. appear to have difficulty treating me as an equal Executive Team member, either for personal reasons or because I am a woman.

In September 1998, Crumpacker was terminated. Following her termination, Crumpacker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter. Subsequently, Crumpacker brought this suit against the State alleging claims of gender discrimination and retaliation.

The State moved for summary judgment on the grounds that: (1) Crumpacker was not an "employee" under Title VII and (2) Crumpacker failed to

-3-

show that she engaged in activity protected under Title VII for which she was terminated or otherwise disciplined. At the hearing on the motion, the State argued that it was entitled to summary judgment on the grounds that Crumpacker's claims were barred by the Eleventh Amendment. Because the State did not raise the issue of Eleventh Amendment immunity in its initial brief on its motion for summary judgment, the district court permitted the State and Crumpacker to file supplemental briefs on the issue. At the conclusion of the hearing, the district court informed the parties that it would consider the issue of Eleventh Amendment immunity prior to ruling on the motion.

Without discussing the issue of Eleventh Amendment immunity, the district court denied the State's motion with respect to Crumpacker's gender discrimination claims, concluding Crumpacker was an "employee" under Title VII and that a genuine issue of material fact existed concerning whether the State discriminated against Crumpacker on the basis of gender. The district court also denied summary judgment on Crumpacker's retaliation claim pertaining to her termination after writing the Franklin letter,[1] reasoning that the State waived its

---

[1] Crumpacker's retaliation claim is premised on opposition conduct. *See* 42 U.S.C. § 2000e-3(a) (designating as an unlawful employment practice discrimination against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

-4-

arguments on the merits of Crumpacker's claim by failing to assert them in the initial brief.[2]

On appeal, the State argues, *inter alia*, that the Eleventh Amendment bars Crumpacker's suit because: (1) Congress did not abrogate the states' sovereign immunity from Title VII retaliation claims and (2) even if Congress abrogated the states' sovereign immunity from such claims, it did not do so for retaliation claims based solely on a plaintiff's subjective good-faith belief that the complained of activity is prohibited under Title VII.

## II. DISCUSSION

### A. Interlocutory Appellate Jurisdiction

While this court typically has jurisdiction only over final decisions of the district court, it may consider appeals of interlocutory orders falling within the collateral order doctrine. *Stewart v. Oklahoma*, 292 F.3d 1257, 1259 (10th Cir. 2002). Under the collateral order doctrine, an otherwise interlocutory order may be reviewed if it "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that

---

[2] The district court granted the State summary judgment on Crumpacker's retaliation claim premised on a complaint she made to the State regarding inappropriate computer usage by a co-worker, reasoning that Crumpacker did not have a subjective good-faith belief that the complained of conduct violated Title VII. This ruling is not at issue on appeal.

appellate consideration be deferred until the whole case is adjudicated." *Puerto Rico Aqueduct*, 506 U.S. at 143 (quotation omitted); *Timpanogos Tribe*, 286 F.3d at 1999. The Supreme Court has held that the denial of a state's claim to Eleventh Amendment immunity falls within the collateral order doctrine. *Puerto Rico Aqueduct*, 506 U.S. at 147. Therefore, the district court's denial of the State's claim to Eleventh Amendment immunity is immediately appealable.[3]

In addition to the Eleventh Amendment immunity issue, the State appeals other various issues raised in its motion for summary judgment, including: (1) whether Crumpacker is an "employee" under Title VII[4]; (2) whether a plaintiff

---

[3] The district court did not expressly rule on the Eleventh Amendment issue in its order partially denying the State's motion for summary judgment. While the State failed to raise Eleventh Amendment immunity in its briefs in support of its motion, the State raised this issue at the motion hearing. Further, the district court provided the parties with an opportunity to submit supplemental briefs and indicated that it would consider the issue in ruling on the State's motion. Because the issue of Eleventh Amendment immunity was properly raised, this court has jurisdiction to consider the issue in this appeal. *Stewart v. Oklahoma*, 292 F.3d 1257, 1260 (10th Cir. 2002) (holding that the district court's failure to address the issue of Eleventh Amendment immunity is an implicit denial of the defendant state's claim to Eleventh Amendment immunity).

[4] The State argues that the determination of whether Crumpacker is an "employee" under Title VII involves an issue of Eleventh Amendment immunity. Specifically, the State argues that because it is ambiguous whether she is an "employee," the Eleventh Amendment bars her suit. The only support the State provides for this argument is the Supreme Court's decision in *Gregory v. Ashcroft*, 501 U.S. 452, 461-62 (1991). In *Gregory*, Missouri state court judges brought claims under the Age Discrimination in Employment Act of 1967 ("ADEA") challenging a provision of the Missouri Constitution which mandated retirement of state judges at the age of seventy years. *Id*. at 455. The Court noted that decisions regarding the qualification and regulation of state judges are

may maintain a retaliation claim based on a purely subjective good-faith belief that the complained of activity violated Title VII; and (3) whether Crumpacker presented sufficient evidence to support her retaliation claim. The district court's resolution of these issues, however, does not decide questions separate from the merits, and is neither conclusive nor effectively unreviewable on appeal from final judgment. *Timpanogos Tribe*, 286 F.3d at 1200. Therefore, these issues do not warrant an interlocutory appeal in their own right.

This court, however, may exercise pendent appellate jurisdiction over otherwise nonappealable decisions that are "inextricably intertwined with the appealable decision" or require review to provide a meaningful analysis of the

typically within the control of the states and that such "decision[s] [are] of the most fundamental sort for a sovereign entity." *Id*. at 460. The Court reasoned that because "[c]ongressional interference with [such] decision[s] . . . would upset the usual constitutional balance of federal and state powers," Congress "should make its intention clear and manifest if it intends to pre-empt the historic powers of the States." *Id*. at 460-61 (quotation omitted). The aspect of sovereignty at issue in *Gregory* was the states' ability to determine the qualifications of state judges. *Id*. The *Gregory* court reasoned that by determining whether state judges as a class were "employees" under the ADEA, it "may avoid a potential constitutional problem." *Id*. at 464. In this interlocutory appeal where the State raises only an Eleventh Amendment challenge, the aspect of sovereignty at issue is the states' *immunity from suit* in federal court. This context is wholly different from that in *Gregory*. The issue of congressional intent has already been decided by the Supreme Court in an Eleventh Amendment context. In *Fitzpatrick v. Bitzer*, the Court held that Congress clearly expressed an intent to abrogate the states' Eleventh Amendment immunity from Title VII claims. 427 U.S. 445, 449 n.2 (1976). Therefore, unlike the Court in *Gregory*, this court need not address the issue of whether Crumpacker is an "employee" under Title VII in an attempt to avoid a "potential constitutional problem." *Gregory*, 501 U.S. at 464.

appealable decision. *Id.* (quotation omitted). On appeal, the State argues that the states' Eleventh Amendment immunity has not been abrogated for Title VII retaliation claims based only on the plaintiff's subjective good-faith belief that the complained of conduct violated Title VII. In order to resolve the appealable Eleventh Amendment claim, this court must address whether a Title VII retaliation claim may be maintained on the plaintiff's subjective good-faith belief alone. Therefore, the determination of whether a Title VII retaliation claim may be maintained on a subject good-faith belief is inextricably intertwined with the appealable Eleventh Amendment claim and review of this issue is necessary to analyze the State's Eleventh Amendment claim in a meaningful way. *See Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995) (holding that a claim is "inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal").

In sum, this court has appellate jurisdiction over the interlocutory appeal of the State's claim of Eleventh Amendment immunity. Moreover, this court exercises pendent appellate jurisdiction to determine whether a plaintiff may maintain a retaliation claim based on a subjective good-faith belief that the complained of conduct violated Title VII.

-8-

**B. Eleventh Amendment Immunity**

This court reviews *de novo* the district court's denial of a state's claim to Eleventh Amendment immunity. *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001); *Stewart*, 292 F.3d at 1260.

The Eleventh Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Congress, however, may abrogate Eleventh Amendment immunity "when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority." *Id*. (quotation omitted). Congress' power to abrogate the states' Eleventh Amendment immunity arises under § 5 of the Fourteenth Amendment. *Nev. Dep't of Human Res. v. Hibbs*, 123 S. Ct. 1972, 1976 (2003). In exercising its authority under § 5, Congress may "do more than simply proscribe conduct that [has been] held unconstitutional." *Id*. at 1977. Congress' authority extends to providing remedies and to deterring violations of rights guaranteed by the Fourteenth Amendment "by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Id*. (quotation omitted). Therefore, "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Id*.

In *Fitzpatrick v. Bitzer*, the Supreme Court held that Congress, by amending Title VII in 1972 to include state and local governments as "employers," expressed a clear intention to abrogate the states' Eleventh Amendment immunity. 427 U.S. 445, 449 n.2 (1976). The State argues, however, that the Court has not resolved whether Congress acted within its § 5 authority when it enacted the Title VII retaliation provisions and that the enactment of the retaliation provisions was an improper exercise of Congressional authority.

Legislation properly enacted under § 5 may not "attempt to substantively redefine the States' legal obligations." *Hibbs*, 123 S. Ct. at 1977 (quotation omitted). Moreover, such "legislation must exhibit congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 1978 (quotation omitted). In examining whether legislation is congruent and proportional, the courts consider "whether Congress had evidence of a pattern of constitutional violations on the part of the States." *Id.*

In *Nevada Department of Human Resources v. Hibbs*, the Supreme Court analyzed whether Congress acted within its authorized § 5 power when it abrogated the states' Eleventh Amendment immunity through the Family Medical Leave Act's ("FMLA") family-leave provision. *Id.* at 1977. In determining whether the family-leave provision exhibited congruence and proportionality, the

*Hibbs* Court focused on the principle that gender-based classifications are subjected to heightened scrutiny. *Id.* at 1978. The Court reasoned that "[b]ecause the standard for demonstrating the constitutionality of a gender-based classification is more difficult to meet than our rational-basis test . . . it [is] easier for Congress to show a pattern of state constitutional violations." *Id.* at 1982.

The legislative record before Congress when it enacted the 1972 amendments to Title VII indicates that Congress identified a pattern of employment discrimination based on gender by the states. In enacting the 1972 amendments to Title VII, Congress noted that "discrimination against minorities and women continue[d]" after the passage of the Civil Rights Act of 1964. H.R. Rep. No. 92-238 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2139. Congress relied on several studies showing that women were employed in "less challenging, . . . less responsible and . . . less remunerative positions on the basis of their sex alone," and statistical data demonstrating that women were economically disadvantaged as a class to conclude that women workers suffered from discriminatory treatment. *Id.* at 2140-41. Moreover, Congress was apprised of the problems of gender discrimination on the part of states through its consideration of the Equal Rights Amendment and the Educational Opportunity Act. *See Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 625 (8th Cir. 2001) (noting that Congress "held extensive hearings and received numerous reports detailing racial

and gender discrimination by the states which were relevant" to the 1972 amendments to Title VII, the Equal Rights Amendment, and the Education Opportunity Act). Therefore, the legislative record demonstrates an identified history and pattern of unconstitutional gender-based employment discrimination by the states. *Nanda v. Bd. of Trs. of the Univ. of Ill.*, 303 F.3d 817, 830-31 (7th Cir. 2002) (holding that Congress identified a history and pattern of unconstitutional employment discrimination on the basis of gender by the states); *Okruhlik*, 255 F.3d at 625 (same).

The State argues that, while Congress may have identified a pattern of unconstitutional gender discrimination by the states, it failed to identify a pattern of retaliatory conduct by the states. This court, however, need not "pars[e] the legislative findings with regard to Title VII" as finely as the State suggests. *Warren v. Prejean*, 301 F.3d 893, 899 (8th Cir. 2002). Lack of evidence in the legislative history of particular instances of retaliatory conduct is not dispositive of whether Congress properly exercised its authority under § 5 in enacting the retaliation provision of Title VII. *Id.* To properly enact legislation under its § 5 authority, Congress need not identify a pattern of each *form* of gender discrimination in the workplace by the states. *Cf. Garrett*, 531 U.S. at 368. Rather, Congress need only identify a history and pattern of unconstitutional behavior on the part of states. *Fla. Prepaid Postsecondary Educ. Expense Bd. v.*

-12-

*Coll. Sav. Bank*, 527 U.S. 627, 645-46 (1999). Here, Congress clearly identified a pattern of unconstitutional employment discrimination on the basis of gender by the states.

In addition to identifying such a pattern of unconstitutional discrimination, Congress also identified the lack of an "effective forum to assure equal employment" for state employees. H.R. Rep. No. 92-238 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2152-53. By enacting the retaliation provision, Congress ensured that state employees could utilize the protections of Title VII by reporting instances of discrimination without the fear of retaliatory conduct. Given the evidence of gender discrimination by the states and Congress' recognition that state employees did not have an "effective forum to assure equal employment," Congress acted within its § 5 authority to enact necessary prophylactic legislation to remedy the identified pattern of gender discrimination. The retaliation provision of Title VII is, therefore, congruent and proportional to the identified constitutional injury to be remedied. Because Congress identified a pattern and history of gender discrimination by the states and because the retaliation provision is congruent and proportional to this identified constitutional injury, Congress properly exercised its § 5 authority in enacting the retaliation provision of Title VII.

The State, however, goes on to argue that, even assuming Congress properly abrogated the states' Eleventh Amendment immunity from the retaliation claims under Title VII, it did so only with respect to those claims which are based on actual violations of Title VII. Therefore, the State argues, to the extent Crumpacker's retaliation claim is based only on her subjective good-faith belief that the underlying conduct violated Title VII, the State is immune from suit.

To address the State's argument, this court must first decide whether a plaintiff may maintain a retaliation claim based on a subjective good-faith belief that the challenged conduct violated Title VII. In *Love v. RE/MAX of Am., Inc.*, this court held that a plaintiff can maintain a retaliation claim "based on a mistaken good faith belief that Title VII has been violated." 738 F.2d 383, 385 (10th Cir. 1984). Subsequently, in *Jeffries v. Kansas*, this court held that "a plaintiff may maintain an action for retaliation based on participation in a protected proceeding regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII." 147 F.3d 1220, 1231 (10th Cir. 1998). The *Jeffries* court also cited with approval the First Circuit's interpretation of the participation clause of Title VII as not "requiring that the charges be valid, nor even . . . implied[ly] requir[ing] that they be reasonable." *Id.* (quotation omitted). In a recent unpublished disposition, this court has suggested that *Jeffries* allows plaintiffs to maintain retaliation claims premised on

-14-

statutory opposition conduct which in turn are based on an unreasonable good-faith belief that Title VII was violated. *Shinwari v. Raytheon Aircraft Co.*, No. 98-3324, 2000 WL 731782, at \*5 (10th Cir. June 8, 2000). Under an expansive reading of *Jeffries*, plaintiffs may maintain retaliation claims based on an unreasonable subjective good-faith belief that the opposed conduct violated Title VII.

The Supreme Court, however, recently rejected by implication any interpretation of Title VII that would permit plaintiffs to maintain retaliation claims based on an unreasonable good-faith belief that the underlying conduct violated Title VII. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). In *Clark*, the Supreme Court reversed the Ninth Circuit and upheld the dismissal of an employee's retaliation claim, concluding that "no one could reasonably believe that the incident violated Title VII." *Id.* Under the Ninth Circuit's interpretation of Title VII, a plaintiff could state a retaliation claim based on a reasonable good-faith belief that the underlying conduct violated Title VII. *Id.* While the *Clark* Court did not address the propriety of the Ninth Circuit's interpretation of the Title VII retaliation provision, the Court did implicitly reject any interpretation of Title VII which would permit a plaintiff to maintain a retaliation claim based on an *unreasonable* good-faith belief that the underlying conduct violated Title VII. *Id.* Accordingly, the Supreme Court's decision in

*Clark* supercedes and overrules this court's prior decisions, to the extent they interpreted Title VII as permitting retaliation claims based on an *unreasonable* good-faith belief that the underlying conduct violated Title VII. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (holding that a decision of a panel of this court may not be reversed absent *en banc* reconsideration or a superseding Supreme Court decision).[5]

Finally, the State argues that Congress' authority under § 5 is limited to remedying *actual* constitutional violations. Therefore, the State argues, Congress did not properly abrogate the states' Eleventh Amendment immunity for retaliation claims based only on a reasonable good-faith belief that the underlying conduct violated Title VII. The Supreme Court, however, has held that Congress is authorized to enact prophylactic § 5 legislation designed to remedy and deter discrimination. *Hibbs*, 123 S. Ct. at 1979. Further, the Court has rejected the proposition that Congress' authority under § 5 is limited to proscribing actual discrimination. *Id*. at 1983. By permitting plaintiffs to maintain retaliation

---

[5] The State argues that it is ambiguous whether, under Title VII, a retaliation claim may be based on challenged conduct which does not actually violate Title VII. Further, the State argues that such ambiguity entitles the State to Eleventh Amendment immunity. This court, however, has held that an *actual violation* is not required to maintain a retaliation claim under Title VII. *See Love v. RE/MAX of Am., Inc*., 738 F.3d 383, 385 (10th Cir. 1984). Accordingly, because there is no ambiguity regarding this issue, the State's argument lacks merit.

claims based on a reasonable good-faith belief that the underlying conduct violated Title VII, employees are able to report what they reasonably believe is discriminatory conduct without fear of reprisal. Strong policy supports allowing plaintiffs to maintain such claims. *Robben v. Runyon*, No. 98-3177, 2000 WL 123421, at *5 (10th Cir. Feb. 1, 2000) (Murphy, J., concurring). The determination of what constitutes prohibited conduct under Title VII continually evolves as "courts continue to struggle with the question of the types of workplace discrimination and harassment which are prohibited by Title VII." *Id.* If plaintiffs are not protected from retaliation when they challenge conduct that they have a reasonable good-faith belief is prohibited by Title VII, "the incentives for asserting otherwise valid claims at the margins of Title VII are drastically reduced, if not eradicated." *Id.* Therefore, Congress is authorized to enact such prophylactic § 5 legislation to deter gender discrimination in the workplace and that authorization extends to the prohibition of retaliation even when the underlying conduct may not constitute a violation of Title VII.

## IV. CONCLUSION

For the reasons stated above, this court **AFFIRMS** the district court's denial of the State's claim to Eleventh Amendment immunity.