**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALEX HELD,

      Plaintiff–Appellant,

v.

FERRELLGAS, INC.,

      Defendant–Appellee.

No. 11-3344
(D.C. No. 2:10-CV-02393-EFM-GLR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

Alex Held filed suit against his former employer, Ferrellgas, Inc., under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), alleging that Ferrellgas had

unlawfully retaliated against him for exercising his Title VII rights. The district court

granted summary judgment in favor of Ferrellgas, concluding that Held failed to establish

a prima facie case of retaliation. Exercising jurisdiction under 28 U.S.C. § 1291, we

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

affirm.

# I

Held began working for Ferrellgas on February 13, 2008. He was one of five National Account Coordinators employed at Ferrellgas' Overland Park, Kansas location. At the time of his termination, Held was the only male National Account Coordinator in Overland Park. During the first several months of Held's employment, however, there was one other male National Account Coordinator who was subsequently promoted.

On April 14 or 15, 2009, Held requested a meeting with Amber Potts, his immediate supervisor, to address concerns regarding his co-worker Megan Foresee, another National Account Coordinator. Held stated that when he asked Foresee questions, she would "rudely respond" with a "sharp tone," a "sigh," and an "off-putting" look. Held testified that Foresee's rude conduct began a "couple months" before he spoke with Potts, and occurred a couple of times a week. According to Held, he told Potts he believed Foresee treated him differently than the other account coordinators because he was a man.

Shortly after Held's initial meeting with Potts, Potts convened a meeting with Held and Foresee to address their conflict. At the meeting, Foresee stated that she responded to Held's questions as she did because she had a grudge against him. Foresee explained that when she was a new employee Held declined to help her despite being more senior. She also believed that Held was not carrying his weight on the team. Foresee said that she would work on her attitude and phrasing things more appropriately.

-2-

Held felt the meeting had resolved the issue.

On April 17, 2009, Troy Coats, Held's second-level supervisor, informed Held that he was immediately terminating Held's employment. Coats told Held that he did not like the way he had handled the situation with Foresee because Held should have first tried to resolve the situation on his own. According to Held, Coats also stated that he did not see Held "busting his ass" on his accounts. Coats and Potts later testified that they were generally concerned that Held could not manage his workload, was often absent from work, did not always follow company procedures, and was not a team player.

In July 2010, Held filed a lawsuit alleging that Ferrellgas retaliated against him for complaining about gender discrimination and harassment. The district court granted summary judgment in favor of Ferrellgas. Held timely appealed.

## II

We review a district court's grant of summary judgment de novo. Kan. Penn Gaming, L.L.C. v. HV Props. of Kan., L.L.C., 662 F.3d 1275, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we review the evidence in the light most favorable to the nonmoving party. Bertsch v. Overstock.com, 684 F.3d 1023, 1027 (10th Cir. 2012).

Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee who has acted to vindicate his statutorily protected rights by

reporting harassment or discrimination in the workplace.  § 2000e-3(a); see also Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002).  An employer therefore cannot take any adverse action against an employee because that employee has "opposed any practice made an unlawful employment practice by [Title VII]."  § 2000e-3(a).

We analyze Held's Title VII claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which both parties invoke.[1] Under the McDonell Douglas three-part test, a plaintiff must first establish a prima facie case of retaliation by showing "(1) that [h]e engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012).  Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate reason for its adverse employment action.  Twigg, 659 F.3d at 998.  Finally, if the employer satisfies its burden, then the plaintiff must demonstrate that the employer's proffered reason for its adverse action is pretexual.  Id.

The district court found that Held could not satisfy his initial burden of establishing a prima facie case of retaliation because he failed to show that he engaged in

---

[1] We apply the McDonnell Douglas burden-shifting framework when we lack direct evidence that retaliation played a motivating role in the employment decision. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011).

-4-

a statutorily protected activity. Held contends that he did so by reporting Foresee's behavior to Potts, behavior Held characterizes as violating Title VII's prohibition against gender discrimination and creating a hostile work environment.[2]

To establish that he was engaged in statutorily protected activity, Held must show that he had a reasonable, good faith belief that he was opposing discrimination prohibited by Title VII. Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163, 1171 (10th Cir. 2003). A plaintiff need not establish that he was actually discriminated against; he need only show that he had a reasonable, good faith belief that he was reporting conduct prohibited by Title VII. Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015-16 (10th Cir. 2004).

To determine whether a reasonable person in Held's position could have believed that he was opposing prohibited conduct, we look to the underlying substantive law. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam) (considering the elements of a sexual harassment claim in determining whether a plaintiff had a reasonable belief that she had been sexually harassed when she complained to her employer).

---

[2] Although Ferrellgas characterizes Held's retaliation claim as also based on reporting sexual harassment, the district court did not interpret Held's claim as such, and on appeal Held argues that Ferrellgas "terminated his employment in retaliation for his complaint of a hostile work environment and gender discrimination." Therefore, we only address the substantive law relating to these two claims.

## A

Held first asserts that it was reasonable for him to believe that he was a victim of reverse gender discrimination. "Title VII forbids actions taken on the basis of sex that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'" Id. at 270 (quoting § 2000e-2(a)(1)). To assert a prima facie case of gender discrimination in the workplace, a plaintiff must ordinarily show that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). In a reverse gender discrimination case, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1201 (10th Cir. 2006).

We agree with the district court that Held's belief that Foresee's conduct constituted reverse gender discrimination was not objectively reasonable. Held does not claim that Foresee discriminated against him with respect to the terms or conditions of his employment, or that her rude behavior was an adverse employment action. Neither does Held assert that men at Ferrellgas suffered adverse treatment as a class, nor that Foresee treated the many other men in the workplace similarly. And the sole factual circumstance Held presents to support an inference of gender discrimination is that he was the only

man among the five-person team of National Account Coordinators.

Held relies on several cases that are materially distinguishable from the case at bar. First, Held argues that the district court erred in looking to the substantive requirements of a reverse gender discrimination claim, citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), for the proposition that Title VII's retaliation provision reaches more broadly than its substantive prohibitions. However, Burlington applies to the second prong of the prima facie case for retaliation, which is not at issue in this case.[3] See id. at 67. Second, Held asserts that a good faith belief that the reported behavior violates Title VII is sufficient to satisfy the first prong of a prima facie case. He relies on Love v. RE/MAX of Am., Inc., 738 F.2d 383 (10th Cir. 1984), a case decided well before this court concluded in Crumpacker that the Supreme Court has rejected "any interpretation of Title VII which would permit plaintiffs to maintain retaliation claims based on an unreasonable good-faith belief that the underlying conduct violated Title VII." 338 F.3d at 1171 (emphasis added). Finally, Held notes that in Argo this court held that a plaintiff had satisfied the requirements for a prima facie case of retaliation by claiming that the female supervisor had commented on the male employee's legs, smiled and winked at him, given him a sexually suggestive birthday card, touched him, and otherwise acted in a flirtatious manner. 452 F.3d at 1196-98. However, in this case

_____

[3] Ferrellgas argues that Held cannot establish the first and third prongs of his prima facie case of retaliation, but does not dispute that Held has established the second prong (that Ferrellgas took adverse employment action against him).

there is no such evidence that Foresee's treatment of Held was motivated by his gender. We therefore conclude that Held's belief that he was subjected to reverse gender discrimination was not reasonable.

**B**

Held also argues that it was reasonable for him to believe that Foresee subjected him to a hostile work environment in violation of Title VII. An actionable hostile work environment claim requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1326-27 (10th Cir. 2004) (quotation omitted). It also requires a plaintiff to "produce evidence" that he was "targeted for harassment because of h[is] gender . . . ." Id. at 1327.

A theme derived from cases addressing the scope of Title VII is that it does not protect from "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). We have therefore held that a co-worker "could be unconscionably rude and unfair [to a plaintiff] without violating Title VII." Petersen, 301 F.3d at 1188; see also Somoza v. Univ. of Denver, 513 F.3d 1206, 1214 (10th Cir. 2008) (noting that Title VII is not a "general civility code").

We agree with the district court that Held's belief that he was subject to a hostile work environment in violation of Title VII was not objectively reasonable. Foresee's

-8-

"sharp tone," "sigh[s]," and "off-putting" looks were not sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Moreover, they do not establish that Foresee "targeted" Held for harassment because of his gender. See Sandoval, 388 F.3d at 1327. In Sandoval, we held that a plaintiff could not survive summary judgment on a hostile work environment claim despite being the "target of apparently sexist remarks" on two occasions. Id. After noting that the plaintiff had failed to show that other alleged mistreatment was motivated by gender bias, we concluded the plaintiff could not show that the treatment was sufficiently severe or pervasive. Id. Held has made an even lesser showing that he was targeted by Foresee because of his gender, and rude behavior alone is insufficient to show a hostile work environment. Cf. Petersen, 301 F.3d at 1188 (unconscionable rudeness is not a Title VII violation).

### III

For the foregoing reasons, we conclude that Held has failed to establish that he possessed an objectively reasonable belief that the activity he opposed was unlawful under Title VII. Having made this determination, we need not consider the other elements of Held's prima face case for retaliation. The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-9-