FILED
United States Court of Appeals
Tenth Circuit

December 1, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

VIKTORYA REZNIK,

    Plaintiff - Appellant,

v.

No. 21-4007

INCONTACT, INC., doing business as
Nice inContact,

    Defendant - Appellee.

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:20-CV-00104-JCB)**

_____

Philip C. Patterson, Ogden, Utah, for Plaintiff - Appellant.

M. Christopher Moon (Rick J. Sutherland, with him on the brief), Jackson Lewis PLLC,
Salt Lake City, Utah, for Defendant - Appellee.

_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

    Plaintiff-Appellant Viktorya Reznik appeals from the district court's dismissal of

her Title VII retaliation action against her former employer, Defendant-Appellee

inContact, Inc. (inContact).  Reznik v. inContact, Inc., No. 20-cv-00104, 2020 WL

7493200 (D. Utah Dec. 21, 2020).  The district court dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse.

## Background

From January 2018 to May 2019, Ms. Reznik worked as a Director of Project Management for inContact, a Utah-based corporation offering cloud-based services to companies using call centers.  In April 2019, Ms. Reznik received internal complaints about racial slurs in the workplace from two native Filipino employees, Jamar Go and Kristine Dalere, who worked in the company's Manila, Philippines office.  They claimed that an inContact manager, Scott Mendenhall, had repeatedly subjected them and other native Filipino employees to racial slurs, calling them "monkeys" and "not human." Compl. ¶ 13.  Mr. Mendenhall worked in the same Salt Lake County facility as Ms. Reznik.

Mr. Go and Ms. Dalere each told Ms. Reznik that Mr. Mendenhall's harassment had become more vitriolic and more frequent.  They explained that this harassment had become so extreme and pervasive that it was interfering with their performance at work as well as their physical and emotional well-being.  They asked permission to be excused from meetings Mr. Mendenhall led that were not part of their duties.

Ms. Reznik first relayed these complaints to her immediate supervisor, Vice President of Management Information Systems and Trust, Gwen Shivley, who "expressed . . . shock and dismay . . . while stating that no one should be treated in that manner." Id. ¶ 19.  A few days later, Ms. Reznik shared these complaints with Human Resources (HR)

2

business partner John Bishoff and HR employee Chelsea Bohmer, who were similarly disturbed.  Mr. Bishoff assured Ms. Reznik that no inContact employee would be subjected to workplace reprisal.  A few weeks later, Ms. Shivley and Mr. Bishoff met with Ms. Reznik and terminated her employment, respectively commenting only that Ms. Reznik was "not a good culture fit" and "not a good fit."  Id. ¶¶ 25–26.

Following Ms. Reznik's termination and administrative exhaustion, she filed her Title VII complaint in federal district court.  inContact moved to dismiss and the district court granted the motion.[1]  According to the district court, Ms. Reznik failed to state a claim because she did not show an objectively reasonable belief that she opposed conduct unlawful under Title VII.  See Reznik, 2020 WL 7493200, at *3.

## Discussion

We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012).  In evaluating such a motion, the court must take as true "[a]ll well-pleaded facts, as distinguished from conclusory allegations," view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings.  Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002) (quotation and citation omitted).  To withstand a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[1] The parties consented to a magistrate judge conducting all proceedings, including entry of final judgment. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

### I.      Title VII's Anti-retaliation Provision

Title VII's anti-retaliation provision (the opposition clause) bars an employer from discriminating against an individual who has "opposed any practice made an unlawful employment practice" by the statute.  42 U.S.C. § 2000e-3(a).  To state a prima facie case of Title VII retaliation, Ms. Reznik must plausibly allege "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  See Khalik, 671 F.3d at 1193 (quotation and citation omitted).

To plead the first element, Ms. Reznik need not establish that the conduct she opposed actually violated Title VII, only that she had both a subjective good faith and objectively reasonable belief that it did.  See Crumpacker v. Kan. Dep't of Hum. Res., 338 F.3d 1163, 1171–72 (10th Cir. 2003).  The only issue before us is whether Ms. Reznik's belief was objectively reasonable.[2]  Although not known at the time, Ms. Reznik concedes the legal point that the racial harassment she opposed did not violate Title VII because its protections do not extend to aliens like Mr. Go and Ms. Dalere.  See 42 U.S.C. § 2000e-1(a).  Ms. Reznik asserts that this does not render her belief that she opposed conduct unlawful under Title VII objectively unreasonable.  We agree.

---

[2] The dissent reads our analysis as collapsing the subjective and objective elements of this inquiry.  We respectfully disagree and aim to give effect to both prongs.  Considering the context in which the law is applied does not mean we are conflating the subjective and objective components of this analysis.

## II.    The Reasonableness Test for Title VII Retaliation Claims

The Supreme Court has not established how to determine when a plaintiff's belief that he or she is opposing unlawful conduct is reasonable.  But the Court did undertake a reasonableness inquiry to evaluate a retaliation claim in Clark County School District v. Breeden.  532 U.S. 268 (2001) (per curiam).  In Breeden, the Supreme Court reviewed the Ninth Circuit's extension of protection against retaliation under the opposition clause to individuals who complained about practices they reasonably believed were unlawful, even if they were not.  Id. at 270.  The Court did not rule on this standard's propriety. Rather, it concluded that the plaintiff failed to meet the standard because no reasonable person could believe that the conduct at issue was unlawful.  Id. at 270–71.

Even though the Court did not explicitly endorse the Ninth Circuit's reasonable belief standard, every circuit adopted it after Breeden, see E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 240 (5th Cir. 2016), including this circuit, see Crumpacker, 338 F.3d at 1171–72.  The "reasonable belief" standard in this circuit and most others requires a plaintiff show both a subjective, good faith belief and an objectively reasonable belief that he or she opposed conduct unlawful under Title VII.  See Crumpacker, 338 F.3d at 1171–72; Rite Way Serv., 819 F.3d at 240.  But courts have employed different standards to determine what constitutes an objectively reasonable belief.

### A. The Substantive Law Approach

inContact argues for a substantive law approach, one that gauges objective reasonableness by assessing whether the opposed conduct is actually unlawful.  See, e.g., Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1315–17 (11th Cir. 2002); see also Munoz

5

v. Selig Enters., Inc., 981 F.3d 1265, 1283–88 (11th Cir. 2020) (Carnes, J., concurring in part and dissenting in part).  Courts applying this approach look to the substantive law, and they usually look no further.  See, e.g., Dixon v. Hallmark Cos., Inc., 627 F.3d 849, 857 (11th Cir. 2010).  This is especially true when courts charge plaintiffs with substantive knowledge of the law.  See Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998).  At times, this may include knowledge of law as interpreted by a particular court.  See Weeks, 291 F.3d at 1315.

Generally, conduct "close enough [to unlawfulness] to support an objectively reasonable belief" will support a Title VII retaliation claim.  See Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1311–12 (11th Cir. 2016) (quotation and citation omitted).  At some point, however, if the substantive law directs and solely determines the inquiry, an objectively reasonable belief requires an actual violation.

Some courts have reasoned that an objective reasonableness inquiry that looks beyond the law invites subjectivity.  Their concern is that "[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."  Weeks, 291 F.3d at 1317 (quoting Harper, 139 F.3d at 1388 n.2).  But looking beyond the law to the surrounding circumstances does not automatically reduce an objective reasonableness inquiry to a subjective one.  "An objective standard is judicially administrable . . . [and] avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68–69 (2006).  If anything, it is the substantive law approach that may invite

6

subjectivity.  After all, expecting employees to know an individual circuit's position on employment law is quite subjective.

### B.  The Supreme Court's Decision in <u>Breeden</u>

The Supreme Court provided an example in <u>Breeden</u> of how to conduct a reasonableness inquiry.  <u>See</u> 532 U.S. at 269–71.  The Court did not rule on the propriety of the reasonable, good faith interpretation at hand, <u>id.</u> at 270, but it did examine whether a plaintiff's belief was reasonable under that standard — the exact task in this case. Notably, the Court evaluated both the underlying substantive law as well as what a reasonable person would believe about the law.  <u>See</u> <u>id.</u> at 270–71.

In <u>Breeden</u>, the Court considered whether the plaintiff had a reasonable, good faith belief that she was acting in opposition to sexual harassment unlawful under Title VII. <u>Id.</u> at 269–71.  The plaintiff was reviewing job applicants' psychological evaluations with her male supervisor and another male employee.  <u>Id.</u> at 269.  One applicant's report disclosed that the person had once said to a co-worker, "I hear making love to you is like making love to the Grand Canyon."  <u>Id.</u>  The plaintiff's supervisor read this aloud and said, "I don't know what that means."  <u>Id.</u>  The other male employee replied, "Well, I'll tell you later."  <u>Id.</u>  And the men both chuckled.  <u>Id.</u>

To determine the reasonableness of the plaintiff's belief, the Court analyzed it under the law and the circumstances.  First, it explained that the standard for sexual harassment under Title VII is high because it requires discriminatory treatment so severe or pervasive that it changes the victim's employment experience and environment.  <u>Id.</u> at 270.  Then, the Court evaluated what a "reasonable person could have believed

[regarding] the single incident." Id. at 271. The Court determined the plaintiff's belief was not reasonable because: (1) reviewing psychological evaluations for job applicants was part of her and her male co-workers' job requirements; (2) she had conceded that her co-worker's remarks had not upset her; (3) the incident was not close to the level of severity the law recognizes as harassment; (4) and an isolated, unextreme incident cannot reasonably be considered harassment. See id. The Court concluded that "[n]o reasonable person could have believed that the single incident . . . violated Title VII's standard." Id. Breeden thus invites consideration of what the reasonable employee would think about the law considering the incident circumstances (like job requirements) and facts (like the severity or lack thereof, the pervasiveness, and the effect of alleged discrimination) to determine objective reasonableness. See id.

## C. Objective Reasonableness

We adopt an objective reasonableness inquiry that considers the law against what a reasonable employee would believe, not "what a reasonable labor and employment attorney would believe." Alex B. Long, The Troublemaker's Friend: Retaliation Against Third Parties and the Right of Association in the Workplace, 59 Fla. L. Rev. 931, 955 (2007).[3] "An employee is not an expert in hostile work environment law," see Boyer-

---

[3] In unpublished orders and judgments, this court has looked more strictly at the underlying substantive law. See Clark v. Cache Valley Elec. Co., 573 F. App'x 693, 701 (10th Cir. 2014); Held v. Ferrellgas, Inc., 505 F. App'x 687, 689–90 (10th Cir. 2012). However, we do not find these decisions persuasive; these cases addressed much less serious facts than those at issue. In any case, we are not bound by them. 10th Cir. R. 32.1(A).

Liberto v. Fontainebleau Corp., 786 F.3d 264, 290 (4th Cir. 2015) (en banc) (Wilkinson, J., concurring in part and dissenting in part), so such expertise should not be necessary for one to benefit from Title VII protection against retaliation.  Our precedent clearly establishes that the opposition clause protects employees from retaliation "whether or not an actual [Title VII] violation has occurred."  Hansen v. SkyWest Airlines, 844 F.3d 914, 926 (10th Cir. 2016) (emphasis added).  This necessitates looking beyond the substantive law.  It merits considering what a reasonable employee would understand about the law and believe in the same or similar circumstances.  See Breeden, 532 U.S. at 269–71; Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013) (per curiam).

This approach is consistent with the Supreme Court's explanations of Title VII's form and function.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69.  Title VII must be read "to provide broader protection for victims of retaliation than for those [of] . . . discrimination," because "effective enforcement could . . . only be expected if employees felt free to approach officials with their grievances."  Id. at 66–67; see also Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173–75 (2011).

Further, an objective reasonableness inquiry for Title VII retaliation claims parallels the test for retaliation claims under the Sarbanes-Oxley Act.  Section 806 of Sarbanes-Oxley also provides anti-retaliation protections for employees reporting certain violations along a reasonable belief standard.  See 18 U.S.C. § 1514A; see also 29 C.F.R. § 1980.104(e) (2020).  As the Department of Labor's Administrative Review Board (ARB) has explained, an employee's belief must be subjectively and objectively

9

reasonable.  Sylvester v. Parexel Int'l LLC, No. 07-123, 2011 WL 2165854, at \*11–12 (Admin. Rev. Bd. 2011) (en banc).  Objective reasonableness "is evaluated based on the knowledge available to the reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee."  Id. (quoting Harp v. Charter Commc'ns, Inc., 558 F.3d 722, 723 (7th Cir. 2009)).  This circuit, along with the majority of others, follows this standard.  Lockheed Martin Corp. v. Admin. Rev. Bd., 717 F.3d 1121, 1132 (10th Cir. 2013).

The similarity between the Sarbanes-Oxley and Title VII retaliation schemes is readily apparent from their codified reasonable belief standards and same requirement that such beliefs must be subjectively and objectively reasonable.  We see no reason why they should not share the same test for assessing objective reasonableness as well.  In fact, in Sylvester, the ARB explained that "the objective reasonableness standard in [Sarbanes-Oxley] whistleblower claims is similar to the objective reasonableness standards application to Title VII claims."  2011 WL 2165854, at \*11–12.  We are not the first court to find Sarbanes-Oxley's standard informative in considering application of Title VII's objective reasonableness standard.  See, e.g., Yazdian v. ConMed Endoscopic Tech., Inc., 793 F.3d 634, 646 (6th Cir. 2015).

Other circuits have also considered attendant circumstances alongside the law in evaluating objective reasonableness in Title VII retaliation cases.  See E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 240 (5th Cir. 2016); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282–83 (4th Cir. 2015) (en banc) (majority opinion); Kelly v.

10

Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14–17 (2d Cir. 2013) (per curiam). We find those decisions instructive.

In Boyer-Liberto v. Fontainebleau Corp., the Fourth Circuit evaluated a Title VII retaliation claim where a white employee had twice called a night club server a "porch monkey." 786 F.3d at 269–70. "[W]ith guidance from the Supreme Court [in Breeden]," the court considered what standard should determine when an employee's belief that certain conduct violates Title VII is reasonable. Id. at 284. The court required a "lesser showing" than necessary to meet the legal standard of establishing an actual hostile work environment claim. Id. at 285. As in Breeden, the plaintiff's belief was "based on an isolated incident." Id. at 284. Thus, the court considered the severity of the harassment, which involved factors relevant to the legal standard "used to judge whether a workplace is sufficiently hostile or abusive for purposes of a hostile environment claim — specifically, whether the discriminatory conduct 'is physically threatening or humiliating, or a mere offensive utterance.'" Id. at 284 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The court decided that the plaintiff's belief was objectively reasonable because "'porch monkey' is a racial epithet that is not just humiliating, but is degrading and humiliating in the extreme." Id. at 285 (quotation and citation omitted).

In E.E.O.C. v. Rite Way Serv., Inc., the Fifth Circuit also applied a test for determining the objective reasonableness of a plaintiff's belief that accounted for the "zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." 819 F.3d at 242. The court considered several factors: (1) whether the harasser directed conduct at a specific employee; (2) whether a supervisor's conduct

11

is involved; (3) the context of the conduct, such as understanding multiple incidents in light of one another; and (4) "the setting in which [the plaintiff] voiced her complaint," that is, whether the employer informed the plaintiff of its sexual harassment policies and what those policies included. See id. at 243–44. These factors were relevant because they drew upon conceptions (from caselaw) about what influences people's reasonable beliefs in the workplace. See id. at 242–44.

**III.    Ms. Reznik's Belief That She Opposed Conduct Unlawful Under Title VII**

Determining whether Ms. Reznik's belief that she was opposing conduct unlawful under Title VII was objectively reasonable thus involves analyzing the law, the relevant attendant circumstances of Ms. Reznik's job, and the severity, pervasiveness, and duration of the alleged discrimination. Given a Rule 12(b)(6) motion, we accept the factual allegations of discrimination as true. Ruiz, 299 F.3d at 1181.

The substantive law inquiry concerning the opposed conduct is simple: discrimination against aliens working for American companies in a foreign country is not unlawful under Title VII. 42 U.S.C. § 2000e-1(a). But our inquiry does not end there. We must evaluate the relevant attendant circumstances and consider whether an employee in those circumstances could reasonably believe that he or she opposed conduct unlawful under Title VII.

First, supervising the two victims was a part of Ms. Reznik's job, but harassment and discriminatory treatment was not inherent in Ms. Reznik's role as Director of Project Management. This is unlike in Breeden, where the plaintiff's job requirement of reviewing psychiatric evaluations naturally involved dealing with and discussing

sensitive issues.  See 532 U.S. at 271.  The less highly offensive behavior and statements have to do with an employee's duties, the more reasonable it is for an employee to identify that as workplace-prohibited behavior.  See id.  Second, the discrimination at issue here was severe.  See Boyer-Liberto, 786 F.3d at 284–85; Rite Way Serv., 819 F.3d at 243–44.  Mr. Mendenhall allegedly subjected Mr. Go, Ms. Dalere, and other native Filipino employees to racial slurs including statements that they were "monkeys" and "not human."  Compl. ¶ 13.  Mr. Mendenhall's conduct was shocking enough to provoke serious dismay and disapproval from all three inContact employees to whom Ms. Reznik reported the discrimination.  Compl. ¶¶ 19, 21.  Third, the discrimination at issue was pervasive: it "increased in vitriol and frequency to the point that the harassment was interfering with [the] workplace performance and with [the] emotional and physical well-being" of the harassed employees.  Id. ¶ 14.  Fourth, the discrimination at issue was not isolated: it covered a span of about four months, with both its nature and consequences intensifying over that time period.  Id. ¶ 13.

Considering these circumstances, a reasonable employee could think that Mr. Mendenhall's conduct toward Mr. Go and Ms. Dalere constituted racial and/or national origin discrimination that violates Title VII.  A reasonable employee likely knows that discrimination based on race and/or national origin is unlawful, but is likely unfamiliar with Title VII's statutory exceptions.  Such an employee should not be charged with such specialized legal knowledge.  See Boyer-Liberto, 786 F.3d at 290 (Wilkinson, J., concurring in part and dissenting in part); Kelly, 716 F.3d at 17.  Instead, we ask whether

an employee would reasonably believe that the conduct here constituted unlawful discrimination from an objectively reasonable person's perspective.

Discrimination based on race or national origin violates Title VII when it creates an environment that is objectively and subjectively offensive so that a reasonable person would find it hostile and abusive, and the victim actually perceived it as such. Harris, 510 U.S. at 21–22. The objective reasonableness inquiry turns on such factors of how severe or pervasive the alleged discrimination is as well as its duration. See id. The discrimination alleged here would violate Title VII if directed at covered individuals because it created a hostile and abusive work environment. See id.

Therefore, it would be reasonable for an employee to think that the discrimination at issue would violate Title VII. See Boyer-Liberto, 786 F.3d at 285 (majority opinion) (requiring a "lesser showing" than what is necessary to prove a hostile and abusive work environment). The facts here fit squarely inside the "zone of conduct that falls short of an actual violation" because of 42 U.S.C. § 2000e-1's exemption for aliens, "but could be reasonably perceived to violate Title VII" by anyone not familiar with the statutory exception. Rite Way Serv., 819 F.3d at 242. Therefore, Ms. Reznik's belief that she was opposing conduct unlawful under Title VII was objectively reasonable because that conduct would be discrimination in violation of Title VII but for the statutory exception.

REVERSED and REMANDED for proceedings consistent with this opinion.

21-4007, *Reznik v. inContact, Inc.*

**CARSON**, J. dissenting.

We must answer only one question in this appeal—whether Plaintiff had an objectively reasonable belief that Defendant engaged in an unlawful employment practice. Because I believe that we must measure the objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice against existing substantive law, I respectfully dissent.

The majority suggests that under the substantive law approach, an objectively reasonable belief *requires* an actual Title VII violation. I disagree. See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999) (stating that the conduct a plaintiff opposes need not be unlawful, but it must be close enough to support an objectively reasonable belief that it is). And, to be clear, I do not advocate for such a standard. But I do believe that the reasonable good-faith belief test has both subjective and objective components. "Reasonably objective" must mean something other than "subjective good faith." Indeed, a plaintiff's belief "is not reasonable simply because he or she complains of something that appears to be discrimination in some form." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 15 (2d Cir. 2013) (per curiam). I read the majority's opinion as collapsing "subjective good faith" and "objective reasonableness."

The Supreme Court has not told us what it means to have a reasonable good-faith belief that underlying conduct violates Title VII. The majority relies on Clark County School District v. Breeden, 532 U.S. 268 (2001) (per curiam), in which the

Supreme Court considered what a reasonable person could have believed about an alleged isolated incident of sexual harassment, to inform its opinion on how to determine objective reasonableness. The Supreme Court was clear that the plaintiff had no claim for retaliation because it had reiterated, just three terms prior, that sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Id. at 270−71 (citations omitted). It mentioned the recurring point in its opinions that simple teasing, offhand comments, and isolated incidents will not amount to discriminatory changes in the terms and conditions of employment. Id. at 271 (citation omitted). Thus, no reasonable person could have believed that the single incident violated Title VII's standards. The majority adopts a standard, citing a law review article, that evaluates objective reasonableness from the perspective of a reasonable employee rather than a reasonable labor-and-employment attorney. Fair enough. But the Supreme Court in Breeden held a reasonable employee to some *minimal* knowledge of the law—in that case, an awareness of what it had held just three terms earlier. And to me, an awareness of an explicit statutory exception, excluding aliens abroad from Title VII protection, is not specialized legal knowledge.

The statutory text of Title VII expressly excludes aliens abroad. 42 U.S.C. § 2000e-1(a). Thus, no employer reasonably would have understood that Title VII prohibited the conduct Plaintiff opposed. Measuring one employee's subjective good-faith belief that Title VII prohibits an employer from making offensive comments about aliens abroad against the text of Title VII, which precludes

2

application to aliens abroad, I would hold that Plaintiff lacked an objectively reasonable belief that Defendant's conduct constituted unlawful discrimination and affirm the district court.