**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**March 13, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

PENNIE LANDON,

    Plaintiff - Appellant,

v.

WINSTON HOSPITALITY, INC.;
WINSTON HOLDINGS, INC.;
DELTA FIVE SYSTEMS, LLC,

    Defendants - Appellees.

No. 22-1108
(D.C. No. 1:20-CV-01547-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BRISCOE**, and **MURPHY**, Circuit Judges.
_____

This case arose when Delta Five Systems, LLC fired Ms. Pennie

Landon. After she lost her job, Ms. Landon sued Delta Five for gender

discrimination and retaliation under Title VII of the Civil Rights Act of

1964.[1] The district court granted summary judgment to Delta Five,

---

[*]    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1]    Ms. Landon also sued under state law, but the state-law claims are
not at issue here.

reasoning that Ms. Landon had not presented a prima facie case of discrimination or retaliation. Ms. Landon appeals the grant of summary judgment.

For the gender discrimination claim, we assume for the sake of argument that Ms. Landon presented a prima facie case. Despite that assumption, Delta Five articulated a legitimate reason to fire Ms. Landon. So Ms. Landon needed to show pretext. She failed to do so, and that failure would have entitled Delta Five to summary judgment even if Ms. Landon had presented a prima facie case of gender discrimination.

For the retaliation claim, the district court properly concluded that Ms. Landon hadn't presented a prima facie case. Although Ms. Landon showed evidence of protected action, she presented no evidence linking her complaints about gender discrimination and Delta Five's decision to fire her.

I.    **Delta Five fires Ms. Landon for refusing to provide contact information and failing to make enough sales.**

Ms. Landon worked for Delta Five for roughly a year as a regional sales director. In this role, Ms. Landon was responsible for selling a pest control program to hotels. During her last five months, however, Ms. Landon didn't close any sales.

2

Though she didn't close any sales, she tried to obtain approval from Hilton Hotels for sale of the program to the chain's individual hotels. But Ms. Landon went on sick leave for a week and a half. While Ms. Landon was out, Delta Five's chief financial officer wanted to continue pursuing a contract with Hilton Hotels. On January 2, 2019, he asked Ms. Landon for Hilton Hotels's contact information. Rather than respond, Ms. Landon called her attorney.

Four days later, Ms. Landon reminded Delta Five's president that she was out sick. The president responded the next day, repeating the chief financial officer's request for Hilton Hotels' contact information. Rather than respond with the contact information, Ms. Landon told the president that she wasn't allowed to work while out sick.

Two days later, the president again asked Ms. Landon for the contact information. Ms. Landon again failed to provide the information; this time, she responded that Hilton Hotels was her responsibility. Ms. Landon finally provided the contact information the next day—thirteen days after the company's chief financial officer had initially asked for the information.



When the owner learned what had happened, he fired Ms. Landon.

## II.    We consider Ms. Landon's challenges under the standard for summary judgment.

We conduct de novo review of the district court's summary-judgment ruling, applying the same standard that governed in district court. *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022). Under this standard, the district court must view the evidence and make all justifiable inferences favorably to Ms. Landon. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Viewing the evidence and making reasonable inferences favorably to Ms. Landon, the district court could grant summary judgment to Delta Five only in the absence of a "genuine dispute as to any material fact" and upon Delta Five's showing of an entitlement "to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    Ms. Landon fails to prove gender discrimination.

On the claim of gender discrimination, Ms. Landon needed to show that Delta Five had intentionally discriminated based on her gender. *See Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005) (per curiam). For this showing, Ms. Landon relied on circumstantial evidence of

discrimination. So we apply the framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

Under this framework, the court proceeds in three steps:

1.     Ms. Landon must present a prima facie case of discrimination.

2.     If she makes this showing, the burden shifts to Delta Five to provide a legitimate, nondiscriminatory reason for the firing.

3.     If Delta Five provides a legitimate, nondiscriminatory reason, the burden reverts to Ms. Landon to show pretext.

*See id.* at 1226.

Under the first step, Ms. Landon needed to show that

- she belonged to a protected class,

- she suffered an adverse employment action, and

- the circumstances surrounding the adverse action gave rise to an inference of discrimination.

*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

The parties agreed that Ms. Landon satisfied the first two steps. For the third step, Ms. Landon relied mainly on

- vulgar comments by a supervisor (Mr. Stephen Wiehe) during an out-of-town conference[2] and

---

[2]     The alleged comments referred to

- the big buttons on Ms. Landon's jacket and

5

- the hiring and allegedly preferable treatment of two male salespeople.

The district court concluded that the comments and alleged favoritism hadn't created a reasonable inference of gender discrimination. The court reasoned that

- Ms. Landon had not linked her firing to Mr. Wiehe's comments and

- the two male salespeople hadn't worked long enough for a meaningful comparison to Ms. Landon.

We assume for the sake of argument that Ms. Landon has established a prima facie case of gender discrimination.

Given this assumption, Delta Five incurred a burden to articulate a legitimate, nondiscriminatory reason for Ms. Landon's firing. *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Delta Five articulated three reasons for the firing, stating that Ms. Landon had

1. refused to share contact information for a prospective customer (Hilton Hotels),

2. failed to comply with Delta Five's policy of recording contact information in the designated database, and

3. failed to close any sales over a five-month period.[3]

---

- Mr. Wiehe's retelling of a former boss's statement that he would like to have sex (using a vulgar term) with Mr. Wiehe's wife.

[3]    Delta Five acknowledged that Ms. Landon had tried to obtain approval from two large chains (Hilton Hotels and Wyndham Hotels) to

Ms. Landon acknowledges that Delta Five's explanation satisfied its burden. So Ms. Landon needed to show that Delta Five's explanation constituted a pretext. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

Because the district court concluded that Ms. Landon had not established a prima facie case of gender discrimination, the court did not address pretext. But we have discretion to affirm on any ground adequately supported by the record. *Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1321 (10th Cir. 2003). In deciding whether to exercise that discretion, we consider whether

- the ground was fully briefed and argued on appeal and in the district court,

- the parties have had an opportunity to develop the record, and

- whether the issue involves only questions of law.

*See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004).

These factors support our consideration of the pretext issue. The issue was briefed on appeal. *See* Appellee's Resp. Br. at 21–22; Appellant's Reply Br. at 3–14. And Ms. Landon acknowledges that both sides briefed the issue in district court. Appellant's Reply Br. at 2; *see*

---

allow their individual hotels to buy Delta Five's product. But Delta Five observed that Ms. Landon had not succeeded with either hotel chain.

7

Appellant's App'x vol. 1, at 70–72, 77–78 (Delta Five's summary-judgment motion) (arguing that legitimate grounds existed for the firing and Ms. Landon could not show pretext); Appellant's App'x vol. 2, at 348–50, 353, 358 (Ms. Landon's response to Delta Five's summary-judgment motion) (objecting on the ground that the firing had been pretextual).

Because both parties presented evidence on the issue, resolution turns on a legal issue: whether a reasonable factfinder could conclude that Delta Five's stated reasons for the firing were pretextual. *See Stewart v. City of Okla. City*, 47 F.4th 1125, 1133 n.5 (10th Cir. 2022) (recognizing that "our decision as to whether a genuine and material dispute exists is a legal judgment based on undisputed facts").

To undermine Delta Five's stated reasons, Ms. Landon needed to show that they were "so weak, implausible, inconsistent, or incoherent that a reasonable fact finder could conclude that [they were] not . . . honestly held belief[s] but rather . . . subterfuge for discrimination." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). It wouldn't suffice to show that Delta Five had been wrong or used poor business judgment. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (wrong decision); *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169–70 (10th Cir. 2007) (poor business judgment). For pretext, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and

8

acted in good faith upon those beliefs." *Swackhammer*, 493 F.3d at 1169–70 (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004)).

Ms. Landon doesn't question Delta Five's reliance on her failure to provide contact information or to use the company's database. But she defends her sales performance with six observations:

1.  One of her supervisors called her "an exceptional sales associate with responsibility for several significant accounts," Appellant's App'x vol. 2, at 388,

2.  she received no negative performance reviews or warnings before her termination,

3.  Delta Five did not use objective criteria to evaluate her performance,

4.  she had sold the company product to two hotels in Alabama (even though the transactions did not close until after she was fired),

5.  at the time of her termination, she was working on agreements to sell the product to two national chains,

6.  there had been product shortages, which accounted for the lack of sales.[4]

---

[4]    To prove a product shortage, Ms. Landon relied solely on an affidavit from Delta Five's chief financial officer. The chief financial officer said that "[w]ithin [his] first week on the job, Delta [Five] . . . [had not had] enough product to satisfy the contracts that Ms. Landon had sold, and customers were often upset with Delta because Delta [Five] was far behind on delivering the actual product." Appellant's App'x vol. 2, at 388. But Ms. Landon didn't present any other evidence tying her lack of sales to a product shortage.

9

These observations don't create a reasonable inference of pretext. Delta Five relied not only on Ms. Landon's failure to make sales but also on Ms. Landon's

- refusal to share information on how to contact prospective customers,

- failure to achieve approved vendor status with the two national chains, and

- failure to record information in the company's database.

Delta Five's owner acknowledged that he would have given Ms. Landon more time to make sales, but decided to fire her when she kept refusing to provide a client's contact information to Delta Five's chief financial officer and president:

> I was . . . very disappointed with her performance. As I had said to her, salespeople need to sell, and she wasn't selling.

> But I was willing to give her more time, but once we found out that she was doing—she was doing business off—off company emails and off SalesForce [the company's required database], and she was withholding contacts that were . . . corporate property, which is . . . against policy and company rules.

> We asked her to give us the contacts. She wouldn't give them to us . . . . [W]e should never have had to ask. They should have been in SalesForce.

> . . . .

> We did not even know who the contact person was at . . . Hilton [Hotels] until finally she sent it to us after we had asked her more than once, I believe.

Appellant's App'x vol. 1, at 282.

10

Ms. Landon challenges the owner's assessment, arguing that

- the contact information wasn't urgent,

- Delta Five's emails contain inadmissible hearsay, and

- she had been working to rebuild the company's software.

We reject these arguments.

Ms. Landon appears to assume that Delta Five could have waited until she returned to work. But the chief financial officer and the president apparently didn't want to wait, and Ms. Landon acknowledges that she should have put the contact information in Delta Five's database. So Ms. Landon's disagreement with the timing of Delta Five's requests doesn't undermine the credibility of the owner's explanation. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169–70 (10th Cir. 2007) (concluding that "evidence . . . that the employer was mistaken or used poor business judgment . . . is not sufficient to show that the employer's explanation is unworthy of credibility").

We also reject Ms. Landon's characterization of Delta Five's evidence as hearsay. Delta Five relied on direct testimony by the owner, not characterizations from the emails. *See* Appellant's App'x vol. 1, at 282. The emails showed only that Ms. Landon had not responded when she was on sick leave. *See Lee v. Rapid City Area Sch. Dist. No. 51-4*, 981 F.2d 316, 334 (8th Cir. 1992) ("It is a well-settled principle of employment discrimination litigation that documents and testimony reflecting

11

complaints about a discharged employee are not hearsay, and are admissible, when offered to show the employer's motive and basis for decision.").

Ms. Landon also argues that she had been working to rebuild the company software. This challenge does not suggest pretext. The owner testified that he was concerned with Ms. Landon's failure to enter contact information in the company database. Even if she were trying to rebuild the software, her efforts wouldn't cast doubt on the owner's criticism. She could have entered information in the database, but didn't.

Given the failure to show pretext, Delta Five would have been entitled to summary judgment even if Ms. Landon had presented a prima facie case of gender discrimination. *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316–17 (10th Cir. 2017) (resolving an employee's claims based on her failure to show pretext and "assum[ing] without deciding that [the employee] could make a prima facie *McDonnell Douglas* showing of sex discrimination and retaliation").

## IV.    Ms. Landon fails to present a prima facie showing of retaliation.

We also conclude that the district court properly determined that Ms. Landon had failed to present a prima facie case of retaliation. For this claim, a prima facie showing required proof that

- she had engaged in protected opposition to discrimination,
- she had suffered a materially adverse employment action, and

12

- a causal connection had existed between the protected activity and the materially adverse action.

*Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

On appeal, Ms. Landon points to two instances of protected activity:

1. Before getting fired, Ms. Landon had talked with Delta Five's former chief executive officer and vice president of marketing about vulgar comments by Mr. Wiehe at an out-of-town conference.

2. Within a month of the firing, Ms. Landon had talked with a vice president of human resources (Ms. Bell) about the vulgar comments and then sent an email to the human resources department about her concerns.

Appellant's Opening Br. at 20–21.

Ms. Landon needed to show not only a protected activity but also the owner's knowledge of it. *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("[P]laintiff must show that the individual who took adverse action against him knew of the employee's protected activity."). Ms. Landon lacks any evidence of the owner's knowledge. Though Ms. Bell told the owner about Mr. Wiehe's improper comments, she denied attributing the information to Ms. Landon. And the owner didn't recall hearing about any complaints from Ms. Landon.

Ms. Landon tries to fill the gap with a two-step chain of circumstantial evidence: (1) The owner had admonished Mr. Wiehe for misconduct a month before firing Ms. Landon, and (2) the owner must have been reacting to recent information from the vice president of human

resources (Ms. Bell) that Ms. Landon had complained. The second step is illogical and unsupported.

Ms. Landon's second step is illogical because the owner was warning Mr. Wiehe about his improper behavior. That warning showed that the owner was agreeing with Ms. Landon's characterization of Mr. Wiehe's behavior. Why would the owner side with Ms. Landon about her complaint and then fire her for making the complaint?

Ms. Landon's second step is also unsupported, for the owner didn't identify Ms. Landon as the person who had complained about Mr. Wiehe. Lacking a statement identifying her as the person who had complained, Ms. Landon relies on the timing of the owner's warning to Mr. Wiehe. For the timing, Ms. Landon relies on Mr. Wiehe's testimony about when he had talked to the owner. Mr. Wiehe testified that they had talked in December 2018, roughly a month before the owner fired Ms. Landon. But there's no evidence that anyone had told the owner that Ms. Landon had complained about Mr. Wiehe—either in December 2018 or at any other time. Indeed, the vice president of human resources (Ms. Bell) had learned about Mr. Wiehe's comments from Delta Five's chief executive officer and vice president of marketing—not from Ms. Landon.[5]

---

[5]    Ms. Landon acknowledged that in December 2018, she had asked Ms. Bell whether Mr. Wiehe would be attending a Christmas party. Ms. Bell said *no* and testified that she had no reason to tell the owner about Ms. Landon's question.

Given the undisputed evidence, Ms. Landon has only speculation that Ms. Bell told the owner in December 2018 what Ms. Landon had said. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."). Of course, even with this speculation, Ms. Bell's alleged statement would simply have repeated to the owner what he had learned months earlier.[6]

We thus agree with the district court that Ms. Landon failed to present evidence tying her complaints to the firing. With that failure, the district court didn't err in granting summary judgment to Delta Five on the retaliation claim.

## V.    Disposition

We affirm the grant of summary judgment to Delta Five on Ms. Landon's claims of gender discrimination and retaliation.

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[6]    Ms. Landon argues that Mr. Wiehe wanted the owner to fire her. But there's no evidence that Mr. Wiehe suggested to the owner that he fire Ms. Landon.