25CA0975 Madruga v Dept of Revenue 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0975
State Personnel Board No. 2024S040

John Madruga,

Complainant-Appellant,

v.

Department of Revenue,

Respondent-Appellee

and

State Personnel Board

Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Schwane Law, LLC, Mark A. Schwane, Denver, Colorado, for Complainant-Appellant

Philip J. Weiser, Attorney General, Eric W. Freund, Senior Assistant Attorney General, Sara P. Bellamy, Senior Assistant Attorney General, Amanda C. Swartz, Senior Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

No Appearance for Appellee

¶ 1    Complainant, John "João" Madruga, appeals an order of the Colorado State Personnel Board (Board) affirming the initial decision of an administrative law judge (ALJ).  Because the record supports the Board's decision, we affirm.

I.    Background

¶ 2    In 2022, the Colorado Department of Revenue (Department) attempted to hire a "Deputy Director/Chief of Investigations" for its sports betting section (deputy position).  The sports betting section is a subdivision of the Department's Division of Gaming (Gaming Division).  The minimum qualifications for the position included four years of "professional regulatory investigative experience," and the "preferred qualifications and competencies" included knowledge of Colorado rules and regulations related to gaming/sports betting; excellent interpersonal, communication, and public speaking skills; and an ability to work closely with senior executives to achieve organizational vision, mission, goals, and objectives.

¶ 3    Madruga applied for the deputy position in 2022.  Madruga was born in Portugal, immigrated to the United States with his family as a child, and became a naturalized citizen when he was fourteen years old.  He served in the United States Army and has

1

two master's degrees — one in business administration and one in accounting and financial management. At the time of his application, Madruga had worked in the Gaming Division since 2005. He was hired as a senior investigator, was promoted to supervisory investigator in 2010, and was again promoted to agent in charge (AIC) in 2017. As one of four AICs in the Gaming Division, Madruga supervised the Division's licensing and background investigations sections.

¶ 4    Madruga was not selected for the deputy position. He appealed his non-selection to the Board. And although the Department offered the deputy position to its top two candidates, both candidates declined the offer. During this time, the appointing authority for the position — the director of the Gaming Division — announced his retirement. The Department decided not to fill the deputy position until a new director was hired. The Department hired Chris Schroeder as the new director of the Gaming Division in June 2023. In deference to Madruga's pending appeal to the Board, Schroeder delayed reposting the deputy position until August 2023.

¶ 5    Madruga again applied for the deputy position when it was reopened in 2023. He sat for an initial panel interview with two

other internal candidates and one external candidate. Madruga sat for a second panel interview in September 2023. The panel consisted of Schroeder; Carolyn Berry, manager of the Department's Office of Professional Standards and Training; and Ron Kammerzell, former senior director of the Department's Specialized Business Group (SBG) and former director of the Gaming Division. Schroeder knew of Madruga's national origin and pending appeal, but Berry and Kammerzell did not. The panel utilized identical questions for all of the candidates. Schroeder and Berry determined that William Hiserodt, a supervisory investigator in the sports betting section, was the strongest candidate because he had a better team approach than the others. Berry also found Hiserodt had better answers to questions specifically related to the sports betting industry and moving the Gaming Division forward. Kammerzell stated that he preferred the unnamed[1] third candidate because of their managerial experience in the sports betting section. None of the three panel members identified Madruga as their top

---

[1] The third candidate's name remains undisclosed to protect the individual's privacy.

candidate.  Nevertheless, he was advanced to the final interview round.

¶ 6    In January 2024, an ALJ reviewed Madruga's appeal and concluded there was no discrimination in Madruga's first non-selection.[2]  Schroeder and Mike Phibbs, the senior director of the SBG, then conducted the final interviews for the deputy position. They used identical questions for each of the candidates.  Phibbs knew Madruga's national origin from a conversation the two had about Phibbs' vacation to Portugal.  After the interviews, Schroeder and Phibbs agreed that Hiserodt was the strongest candidate because he was best able to articulate his vision for moving the sports betting section forward and building a team concept. Specifically, Hiserodt's emphasis on collaboration and communication "resonated" with Schroeder's ideas regarding leadership.  Madruga was Schroeder's second choice.  Neither Schroeder nor Phibbs took extensive notes during the interview,

---

[2] The Board subsequently affirmed this decision.  Madruga appealed that decision, and a division of this court affirmed.  *See Madruga v. Dept. of Revenue*, (Colo. App. No. 24CA1160, May 29, 2025) (not published pursuant to C.A.R. 35(e)).

and neither used a scoring rubric to evaluate the candidates' responses.

¶ 7    The Department selected Hiserodt for the deputy position. After this second non-selection, Madruga filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

¶ 8    Hours after Hiserodt signed the Department's offer letter, Schroeder received a lengthy email from an employee in the sports betting section who alleged that Hiserodt had poor work ethic, was not a good team member, lacked professionalism, and had made inappropriate comments to coworkers.  Schroeder immediately forwarded the email to the Department's Office of Human Resources (HR).  After an internal review, HR determined, consistent with the Department's policy, that it would not conduct a formal investigation because the allegations involved "performance issues" and not allegations of illegal discrimination or retaliation.  Instead, HR recommended that Schroeder consider the allegations in connection with Hiserodt's thirty-, sixty-, and ninety-day performance reviews in the new deputy position, which Schroeder did.

¶ 9　　Madruga again appealed his non-selection, alleging that the Department discriminated against him based on his national origin and retaliated against him for previously appealing his non-selection in violation of the Colorado Anti-Discrimination Act (CADA).

¶ 10　　After an evidentiary hearing, the ALJ concluded that the Department's assessment of the candidates was not pretextual because the Department had a legitimate business reason for choosing Hiserodt since he appeared to be the best fit for the position.　Specifically, the ALJ found that Madruga's primary argument that pretext existed — that the Department failed to investigate the internal complaint about Hiserodt — ignored the fact that Schroeder received the complaint only after Hiserodt had accepted the deputy position and the selection process was complete.

¶ 11　　Similarly, concerning Madruga's retaliation claim, the ALJ found Madruga did not establish a prima facie case because he failed to prove a causal connection since the final panel interviews took place before Madruga's EEOC claim and the complaint about Hiserodt arose.　Additionally, the ALJ reasoned that neither Berry

nor Kammerzell knew of the pending appeal of Madruga's first non-selection. The ALJ also denied Madruga's request for attorney fees and costs. Madruga again appealed the ALJ's decision to the Board, which affirmed the ALJ's decision.

¶ 12    On appeal, Madruga contends that (1) the Board erred in finding there was no significant evidence in the record showing that the Department's decision was pretextual, and (2) the ALJ and the Board erred in exclusively relying on subjective evidence. We disagree and affirm the Board's decision.

## II.    Pretext Claims

¶ 13    Madruga contends that the ALJ and the Board erroneously found that he failed to prove discrimination and retaliation. He asserts that (1) he was more qualified than Hiserodt, and (2) the ALJ failed to consider evidence that the Department's proffered reasons for its decision were pretextual. He also contends that the ALJ misapplied the holding in *Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013), in finding that there was no evidence of unlawful discrimination in Madruga's non-selection. Because substantial record evidence supports the ALJ's finding that Madruga's non-

selection was not based on Madruga's national origin or the exercise of his appeal rights, we affirm the Board's decision.

### A. Standard of Review and Applicable Law

¶ 14    The Board is an administrative agency governed by the State Administrative Procedure Act, §§ 24-4-101 to -109, C.R.S. 2025. We may only reverse the Board's decision if it is arbitrary or capricious, unsupported by the record, contrary to law, or in excess of the Board's jurisdiction. *See* § 24-4-106(7)(b), C.R.S. 2025; *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001). Conversely, we must uphold the decision "if a consideration of the record as a whole reveals that the decision is supported by substantial evidence." *Dep't of Hum. Servs. v. State Pers. Bd.*, 2016 COA 37, ¶ 13. In conducting this review, we must accept the ALJ's factual findings unless they have no support in the record. *Id.* at ¶ 14.

¶ 15    As relevant here, CADA forbids an employer from refusing to hire or promote a qualified individual because of their national origin. § 24-34-402(1)(a)(I), C.R.S. 2025. A complainant has the burden of establishing "the four prongs of a prima facie case of discrimination" to merit a hearing. Dep't of Pers. & Admin. Rule 8-

8

25(D), 4 Code Colo. Regs. 801-1. A claimant may establish a prima facie case of discrimination by showing (1) membership in a protected class; (2) qualification for the job at issue; (3) an adverse employment decision; and (4) circumstances giving rise to an inference of unlawful discrimination. *Colo. C.R. Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997).

¶ 16 The burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the employment decision." *Id.* at 401. If the employer meets this burden, the claimant must be given "a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a pretext for discrimination." *Id.*

¶ 17 Once the Department offers a nondiscriminatory reason for the employment action, "the presumption of discrimination 'drops out of the picture,'" and "the trier of fact must decide the ultimate question of whether the employer intentionally discriminated against the [claimant]." *St. Croix v. Univ. of Colo. Health Scis. Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007) (citation omitted). And on post-hearing review, the burden-shifting framework "drops out of the analysis" altogether, and we need only consider whether the

record supports the fact finder's resolution of that ultimate question. *Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 301 (Colo. 2000).

### B. No Inference of Unlawful Discrimination

¶ 18    We begin by noting what is *not* contested. The record shows that Madruga proved the first three elements required to establish a prima facie case of discrimination: (1) membership in a protected class; (2) proper qualifications for the job at issue; and (3) an adverse employment decision. But we conclude that there is insufficient record evidence that gives rise to an inference of unlawful discrimination, for three reasons. *See Big O Tires*, 940 P.2d at 400.

¶ 19    First, to the extent Madruga relies on the circumstances of his first non-selection, including any procedural irregularities in that process, we decline to consider them because they were previously considered and rejected by a division of this court in his first appeal.

¶ 20    Second, Madruga's primary arguments here are that he was objectively more qualified for the position than Hiserodt due to his educational background, length of employment in the Gaming

10

Division, and consistent positive job performance and promotions and that the Department improperly relied only on subjective factors in hiring Hiserodt. While the record supports Madruga's objective qualifications, it also shows that the interview panels (and the ALJ and Board) considered these objective criteria and that Madruga progressed to the final interview based, in part, on them. During the first round of interviews, only Shroeder knew of Madruga's national origin or of the pending appeal. Based on the identical questions asked of all candidates, both Berry and Kammerzell ranked other candidates higher than Madruga, but Madruga still progressed to the final interview.

¶ 21 Third, the Department offered legitimate reasons for hiring Hiserodt. *See Big O Tires*, 940 P.2d at 401. Schroeder testified credibly that in the final interviews, he prioritized candidates' communication skills and long-term vision for the sports betting section over education, managerial experience, and seniority. *See Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981) (finding that reliance on interviews for a supervisory position was not a pretext for discrimination although it may require subjective judgment). This testimony was consistent with the job posting's "preferred

qualifications and competencies." *Cf. Conroy*, 707 F.3d at 1174 (noting that inconsistencies and contradictions in the agency's proffered explanation can support a determination of pretext). He also testified that Hiserodt had more experience in the regulation of sports betting than did Madruga. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) (finding that pretext is inferred only when the criteria on which an employer relies are *entirely* subjective).

¶ 22    Additionally, Schroeder testified that while he focused on interview performance in the final interview, he also considered the candidates' performance reviews, resumes, and supervisory experience. And while the record shows that Madruga had a stronger educational background than Hiserodt, outperformance in one area does not necessarily establish pretext. *See Conroy*, 707 F.3d at 1174 (finding that plaintiff's concededly greater technical skills alone did not create an overwhelming disparity in qualifications to establish a pretext). Based on this testimony, the ALJ concluded that the disparity in qualifications between Madruga and Hiserodt was insufficient to create an inference of discrimination. We may not reweigh the evidence or alter the ALJ's

credibility findings. *See Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 57 ("[W]e may not reweigh the evidence to reach a result contrary to the ALJ's factual findings if those findings are supported by evidence in the record.").

¶ 23     Relying on *Bodaghi*, Madruga argues that the evidence satisfying his prima facie case alone was sufficient to permit an inference of intentional discrimination. 995 P.3d at 292. In *Bodaghi*, an ALJ found that the employee established discrimination by showing that the employer utilized a different selection process than it normally used, including requiring an examination for the candidates after saying such was not required, as well as testimony that the employee did not "fit" in the hiring manager's "good old boy network" agenda. *Id.* at 293-94. The ALJ found the employer's evidence not credible and its reasons for not selecting the employee a pretext for discrimination. *Id.* at 295. The Board affirmed the order, and a division of this court reversed that order. *Id.* at 291-292. The supreme court reversed the division's decision and found that the division had improperly substituted its own findings for those of the ALJ. *Id.* The supreme court therefore affirmed the ALJ's findings and held that additional evidence from

the employee was not needed to create an inference of intentional discrimination. *Id.* at 292.

¶ 24 As in *Bodaghi,* the ALJ here made specific credibility determinations concerning the testimony and evidence and concluded that Madruga failed to establish an inference of discrimination. Simply because the evidence might have permitted such an inference does not mean that it compelled one. And consistent with *Bodaghi,* we accept the ALJ's findings because they are supported by the record.

¶ 25 To the extent Madruga asks us to reweigh the facts that Hiserodt allegedly embellished his resume and that the Department mishandled the allegations made against Hiserodt after he was hired, we decline to do so. Madruga has not identified, nor have we found, any evidence in the record to show that Schroeder knew of the coworker's allegations against Hiserodt before offering him the deputy position. Therefore, the allegations have no relevance to Madruga's discrimination claim. It is the fact finder's role to weigh the conflicting evidence, and when the ALJ's findings are supported by the record, we cannot reject them in favor of our own. *See*

*M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383-84 (Colo. 1994).

¶ 26    Finally, we are not persuaded that *Conroy* requires a different result. In *Conroy,* an employee with concededly greater technical skills argued that the use of "subjective criteria" in the hiring process raised a triable dispute as to pretext. 707 F.3d at 1177. However, for the reasons described above, the ALJ found that Schroeder and Phibbs did not rely solely on subjective data when deciding to make the offer to Hiserodt, and that finding has record support.

## C.    Retaliation

¶ 27    Madruga next contends that substantial record evidence supported his retaliation claim and that the ALJ and Board erroneously concluded otherwise. We are not persuaded.

¶ 28    To state a plausible claim of Title VII retaliation, an employee must allege that (1) they engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse

action. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

¶ 29    As with a discrimination claim, the complainant has the burden of establishing "a prima facie case" of retaliation to merit a hearing. Dep't of Pers. & Admin. Rule 8-25(D), 4 Code Colo. Regs. 801-1. To establish a prima facie case of retaliation under CADA, a complainant must either provide direct evidence of retaliation or show that (1) they engaged in "protected opposition" to prohibited discrimination; (2) they suffered an "adverse action by the employer"; and (3) a causal connection existed between the protected conduct and the adverse employment action. *Smith v. Bd. of Educ.*, 83 P.3d 1157, 1162 (Colo. App. 2003); *see Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008).[3] If the complainant makes a prima facie showing, the respondent must

_____

[3] Cases in this analysis concern retaliation claims under Title VII. However, we may rely on federal law when it is helpful in construing Colorado law. *People v. Davis*, 2012 COA 56, ¶29. Because the applicable language in CADA is substantially similar to Title VII language that prohibits retaliation, we rely on cases interpreting Title VII here. *See Colo. Civil Rts. Comm'n v. Big O Tires, Inc.*, 940 P.2d 387, 399 (Colo. 1997.); *see also* Dep't of Pers. & Admin. Rule 9-4, 4 Code Colo. Regs. 801-1 (noting that state and federal case law should be referenced in determining whether discrimination occurred).

proffer a legitimate and nondiscriminatory reason for the adverse employment action. *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If such evidence is provided, the complainant must then demonstrate that the proffered explanation was pretextual. *Fye*, 516 F.3d at 1227.

¶ 30     Pretext may be shown in a variety of ways, and no particular form of evidence is required to demonstrate a discriminatory inference. *Conroy*, 707 F.3d at 1172. Pretext can be established by showing that an employer's nondiscriminatory explanation is so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Id.* (quoting *Equal Emp. Opportunity Comm'n v. C.R. Eng., Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011)).

¶ 31     A plaintiff claiming retaliation may establish causation through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted). However, "[u]nless there is very close temporal proximity between the protected activity and the

17

retaliatory conduct," the timing itself will not be sufficient to establish causation; rather, "the plaintiff must offer additional evidence to establish causation." *Id.*

¶ 32 On appeal, Madruga primarily contests the ALJ's finding that no causal connection existed between his appeal of his first non-selection and the non-selection here. He relies on the rescheduling of the final interviews until after the completion of his prior appeal, as well as the temporal proximity between the completion of his appeal and his non-selection here. We are not convinced, for two reasons.

¶ 33 First, if Madruga had been successful in his first appeal, then there would have been no reason to hold final interviews for the other finalists because Madruga would likely have been awarded the position. Madruga presented no other evidence to show that rescheduling the interviews was retaliatory. Therefore, we conclude that Schroeder's decision to wait for the Board's decision was a sound business practice unrelated to retaliation.

¶ 34 Second, despite the previous non-selection and appeal, Madruga was interviewed by the initial panel because he met the qualifications for the position and was advanced to the second

panel interview. Moreover, two of the second panel members were unaware of the previous non-selection and appeal, and both ranked Madruga as their second choice. To be sure, both Schroeder and Phibbs were aware of the appeal at the time of the final interview. But Madruga presented no evidence beyond such awareness to establish retaliation. And temporal proximity alone does not suffice. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Accordingly, we discern no abuse of discretion in the ALJ's retaliation finding.

¶ 35 Finally, we discern no legal error in the ALJ's application of the *Conroy* decision. As previously described, all of the final candidates met the minimum job qualifications, which Schroeder considered in the final interview. Moreover, Schroeder focused on interview performance in the final interview and on evaluating the candidates' team building skills, communication skills, and vision for the Department, all criteria listed in the preferred qualifications and competencies of the deputy position posting. "[E]mployment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 604 (2008).

19

¶ 36    Madruga insists that the ALJ erred because Hiserodt was not as qualified as him and because the post-hiring allegations should have disqualified Hiserodt.  But this too turns on credibility determinations.  The ALJ's factual findings and conclusions show she thoroughly considered (1) the candidates' objective qualifications as stated in their resumes; (2) the fact that both Hiserodt and Madruga had excellent performance reviews; and (3) the fact that they both met all minimum and some preferred qualifications.  Importantly, the ALJ also found that Schroeder considered the candidates' resumes and objective qualifications in his overall evaluation but permissibly chose to place more weight on their interviews.  By asking us to conclude otherwise, Madruga asks us to reject this testimony that the ALJ found credible, which we cannot do.  *See St. Croix*, 166 P.3d at 240 ("The issue is not whether the reasons for [the employment decision] were 'wise, fair, or correct,' but whether the employer believed those reasons to be true and whether the employer acted upon those reasons in good faith." (citation omitted)).

¶ 37    Because we conclude that the Department used both subjective and objective methods in their hiring process and that there was no pretext, we affirm the Board's decision.

## III.    Attorney Fees

¶ 38    In a single sentence within his conclusion, Madruga requests an award of attorney fees and costs "pursuant to statute for the Board case and this appeal" without any citation to authority supporting his request.  Because Madruga did not present his request for attorney fees "under a separate heading" and does not "explain the legal and factual basis" for his request, we deny it. C.A.R. 39.1; *see also Andres Trucking Co. v. United Fire & Cas. Co.*, 2018 COA 144, ¶ 63 (declining to consider request for attorney fees when requesting party did not provide any factual recitation or legal authority).

## IV.    Disposition

¶ 39    The order is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.

21